AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Middle District of Florida

| | | |
|---|---|---|
| United States of America<br>v.<br>Justin Richardson<br><br>*Defendant(s)* | ) ) ) ) ) ) ) ) | Case No. 8:17MJ1138 TGW |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __February 18, 2017__ in the county of __Hillsborough__ in the __Middle__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 846 | Conspiracy to possession to distribute controlled substances |

This criminal complaint is based on these facts:
See attached affidavit of Special Agent Danny Fletcher, DEA.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Danny J. Fletcher Jr., DEA Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: Feb. 19, 2017

_____
*Judge's signature*

City and state: Tampa, Florida

Thomas G. Wilson, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Danny J. Fletcher Jr., a Special Agent with the Drug Enforcement Administration ("DEA"), being duly sworn, depose, and state:

## Introduction and Agent Background

1. I have been employed as a Special Agent with the DEA since September 2014, and am currently assigned to the Tampa District Office, Enforcement Group 2. Prior to my employment with DEA, I served as a Sheriff's Deputy for approximately four years with the Jefferson County Sheriff's Office, in Pine Bluff, Arkansas. During my tenure with the Jefferson County Sheriff's Office, I served as a narcotics investigator with the Tri-County Drug Task Force. I was also assigned to the Little Rock District Office of the DEA in Little Rock, Arkansas as a Task Force Officer for approximately eight months. In connection with my official DEA duties, I investigate criminal violations of controlled substances laws, including 21 U.S.C. §§ 841 and 846, and criminal violations of money laundering laws, including 18 U.S.C. § 1956.

## Statutory Authority

2. I am an "Investigative or law enforcement officer" of the United States within the meaning of 18 U.S.C. Section 2510(7) and am empowered by law to conduct investigations of and make arrests for the offenses

enumerated in 18 U.S.C. Section 2516. I submit this affidavit in support of a criminal complaint charging Justin Richardson ("**RICHARDSON**") with conspiring to possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846. This crime took place in the Middle District of Florida, and elsewhere, and is being investigated by DEA.

3. I submit only those facts believed to be relevant to the determination of probable cause, and this affidavit should not be construed as a complete statement of all the facts of the investigation. I learned the following facts through consultation with other law enforcement officers, a review of reports, my personal investigative efforts, as well as my experience and background. The source of the information and the grounds for this belief are as follows:

## Statement of Probable Cause

4. In January 2017, DEA investigators identified a money laundering/drug trafficking organization (the "**MLDTO**") operating out of the Middle District of Florida. The DEA and Internal Revenue Service ("IRS") initiated a joint investigation into the MLDTO, in connection with violations of 21 U.S.C. §§ 841, 846, and 18 U.S.C. § 1956. The leaders of the **MLDTO** coordinate the transportation of kilogram-quantities of cocaine internationally, including into the Middle District of Florida. The **MLDTO** leaders also

negotiate the laundering of drug proceeds via bulk cash currency. **RICHARDSON** has been identified as a money launderer and drug trafficker for the **MLDTO**, based in the Middle District of Florida.

5. **RICHARDSON** is a United States citizen, with a current residence of 943 62nd Terrace South, St. Petersburg, Florida, 33705. In 2010, **RICHARDSON** was arrested for cocaine distribution. After being arrested, law enforcement officials recovered approximately 1.4 million dollars in bulk U.S. currency which belonged to **RICHARDSON**. The investigation revealed that from approximately 2005 until the date of his arrest, **RICHARDSON** had obtained cocaine from Jamaica for resale in the Tampa Bay Area. According to the Bureau of Prisons, **RICHARDSON** was released from incarceration on or about September 23, 2016, and is currently on federal supervised release.

6. On February 16, 2017, at approximately 3:12 p.m., investigators observed **RICHARDSON** arrive at an apartment complex in Tampa, Florida, while operating a gray Infiniti rental vehicle. Based on my training and experience, money laundering/drug trafficking organizations commonly utilize rental vehicles as a tool to conceal their identities and not establish a record of travel. At approximately 3:16 p.m., two individuals ("**Coconspirator #1** and **Coconspirator #2**) arrived and met with **RICHARDSON**. **RICHARDSON** then retrieved a very large black duffle bag, that appeared to

be full, from the trunk of the Infiniti. **RICHARDSON** carried the duffle bag in front of his chest and clutched it as if the duffle bag was extremely heavy. **RICHARDSON**, **Coconspirator #1**, and **Coconspirator #2** then entered an apartment (the "**Apartment**") with the black duffel bag. Based on my training and experience, money laundering/drug trafficking organizations commonly transport large amounts of narcotics and/or bulk cash currency in large duffle bags, due to the sheer volume of the items. At approximately 3:37 p.m., **RICHARDSON** exited the **Apartment** without the black duffle bag and proceeded out of the apartment complex.

7. On February 18, 2017, at approximately 11:37 a.m., investigators observed **Coconspirator #1** and **Coconspirator #2** exit the **Apartment** and leave the apartment complex while operating a silver pick-up truck. At approximately 12:30 p.m., investigators observed **Coconspirator #1** return to the apartment complex with **RICHARDSON** in a silver Chevrolet Suburban. **Coconspirator #1** and **RICHARDSON** then drove very slowly throughout the apartment complex parking lot. Based on my training and experience, this driving maneuver, commonly known as a "heat run," is routinely used by criminals to detect and evade law enforcement. Eventually, **Coconspirator #1** and **RICHARDSON** parked the vehicle and entered the **Apartment**. After a short amount of time, investigators observed **Coconspirator #1** and

RICHARDSON exit the **Apartment** while carrying large duffle bags. Investigators approached **Coconspirator #1** and **RICHARDSON**. Upon making contact with **Coconspirator #1** and **RICHARDSON**, an investigator was able to see inside of one of the duffle bags. In plain view, there were multiple duct-taped packages, which were the size and shape of bundled, U.S. currency. The bundles were marked with "10" and "25" in permanent marker. Based on my training and experience, the packaging and markings are consistent with drug trafficking proceeds. Investigators seized the packages, and subsequently determined that they did in fact contain U.S. currency. At the time, investigators estimated there to be in excess of half a million dollars in U.S. currency in the duffel bags. Based on my training and experience, the wholesale value of a kilogram of cocaine is approximately $30,000.00. At the wholesale price of $30,000.00 per kilogram, half a million dollars would represent approximately 16 kilograms of cocaine

8.   **RICHARDSON** agreed to participate in a post-*Miranda* interview. **RICHARDSON** admitted that he was a multi-pound distributor of marijuana, and had been so since his release from federal prison. **RICHARDSON** stated that he was aware there was approximately $700,000.00 in bulk cash currency in the duffle bags seized by investigators. **RICHARDSON** stated that the bulk cash currency was proceeds from the sale

5

of marijuana and cocaine. **RICHARDSON** explained that on that occasion, he was assisting **Coconspirator #1** in transporting the drug proceeds from Tampa, Florida to an alternative location.

9. **Coconspirator #1** also agreed to participate in a post-*Miranda* interview. **Coconspirator #1** admitted to being a multi-kilogram distributor of cocaine and a multi-pound distributor of marijuana. **Coconspirator #1** stated that subsequent to **RICHARDSON's** release from federal prison, **Coconspirator #1** had supplied **RICHARDSON** with multiple kilograms of cocaine and multiple pounds of marijuana. On the instant occasion, **Coconspirator #1** had supplied **RICHARDSON** with approximately 50 kilograms of cocaine, at the price of $31,000.00 per kilogram. **RICHARDSON** was responsible for selling the 50 kilograms of cocaine and providing the approximate $1,550,000.00 in drug proceeds to **Coconspirator #1**. According to **Coconspirator #1**, the bulk cash currency seized by investigators on February 18, was, in part, drug proceeds from the above-drug transaction between **Coconspirator #1** and **RICHARDSON**.

6

## Conclusion

10. For the reasons set forth above, I believe that probable cause exists to believe that **RICHARDSON** has violated 21 U.S.C. § 846 by conspiring to possess with intent to distribute cocaine. Therefore, I respectfully request that the Court issue the attached criminal complaint and arrest warrant.

Danny J. Fletcher
Special Agent
Drug Enforcement Administration

Sworn to and subscribed before me this 17th day of February, 2017.

THOMAS G. WILSON
United States Magistrate Judge

7